IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DONALD LONG,

    Plaintiff,

v.

GORDON GILL; DOUGLAS OSBORNE;
LANE COUNTY SHERIFF'S OFFICE; and
ROGER'S TOWING,

    Defendants.
_____

Case No. 6:11-cv-06284-MC

OPINION AND ORDER

MCSHANE, Judge:

    Plaintiff Donald Long alleges defendants violated his constitutional rights by impounding his truck and then failing to provide a meaningful hearing to challenge the impound decision. Defendants Gordon Gill, Douglas Osborne, and the Lane County Sheriff's Office move for summary judgment. For the reasons stated below, defendants' motion (ECF No. 48) is DENIED.

## BACKGROUND

    While on patrol around noon on September 20, 2009, Lane County Deputy Sheriff Gorgon Gill initiated a traffic stop on a car displaying expired tags. (Gill Decl. ¶¶ 1-5.) Plaintiff Donald Long, the driver of the car, pulled into a gas station at the corner of Greenhill Road and West 11th Avenue in Eugene. Upon running a records check, Deputy Gill discovered the truck's

1 – OPINION AND ORDER

license plate tags expired in July 2006. (Gill Decl. ¶ 7.) Through an Oregon DMV check, Deputy Gill learned Long's license had been suspended since August 2006. (Gill Decl. ¶ 12.) Deputy Gill cited Long for Driving While Suspended (ORS 806.010), Driving Uninsured (ORS 811.175), and Expired Tags (ORS 803.540(1). Deputy Gill had the truck towed and impounded pursuant to ORS 811.175 and ORS 809.720(1).

Prior to the tow, Long received permission from the assistant manager of the gas station to park the truck at the station. (Long Decl. 1.) The assistant manager informed Deputy Gill that Long was free to park at the station and that the station was private property. Over the objections of Long and the assistant manager, Deputy Gill ordered the truck towed. (Long Decl. 1.) Although the vehicle was legally parked, Deputy Gill never gave Long the opportunity to arrange for the truck to be legally moved to another location. (Long Decl. 2.) Long states that had he had been given the chance to legally remove the truck to another location, he could have done so. (Long Decl. 2.) Long retrieved the truck from Roger's Towing the next day.[1]

Long requested a hearing to contest the validity of the tow and impound. Prior to the hearing, Long twice requested discovery from defendants. (Long Decl. 2.) On October 21, 2009, Lane County Deputy Sherriff Douglas Osborne conducted a hearing regarding the tow and impound of Long's truck. ORS 809.716(3) allows the impounding officer to appear in person or by affidavit. Deputy Gill did neither. Instead, Deputy Gill submitted his "narrative" and the citations to Deputy Osborne. At the hearing, Deputy Osborne refused Long's requests to view Deputy Gill's report and read the report into the record. (Long Decl. 3.) Long informed Deputy Osborne that if the arguments, alleged facts, and evidence were not disclosed, Long could not

---

[1] Prior to oral argument, I granted Long's motion for a stipulated judgment dismissing Roger's Towing from this action.

2 – OPINION AND ORDER

meaningfully defend himself or challenge the case against him. During a recess, Long went to the records department and requested Deputy Gill's report. Long's request was refused. Deputy Osborne upheld Deputy Gill's decision to impound Long's truck.

Long, proceeding *pro se*, filed this action alleging defendants violated his constitutional rights by illegally seizing his property and then failing to provide a constitutionally adequate hearing to challenge the decision to impound the truck.

## STANDARDS

The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. Rivera v. Phillip Morris, Inc., 395 F.3d 1142, 1146 (9th Cir. 2005) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. Id. The court reviews evidence and draws inferences in the light most favorable to the non-moving party. Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006) (quoting Hunt v. Comartie, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

**1. The Seizure**

The impoundment of a vehicle by law enforcement constitutes a seizure under the Fourth Amendment. *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005). Subject to certain exceptions, a warrantless seizure is *per* se unreasonable under the Fourth Amendment. *Id.* The

3 – OPINION AND ORDER

question presented here is whether the community caretaking doctrine is a valid exception under the specific facts of the warrantless seizure at issue. As explained by the Supreme Court:

> To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities. Police will also frequently remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic. The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.

*South Dakota v. Opperman*, 428 U.S. 364, 368-69 (1975) (internal footnote omitted).

There is no dispute that at the time Deputy Gill pulled Long over, Long's truck was not registered and Long lacked a valid license and insurance. However, those facts alone do not automatically justify Deputy Gill's decision to impound Long's truck. *Miranda*, 429 F.3d at 865 (the question is not whether state law authorized the impoundment, but whether or not the seizure was reasonable under the Fourth Amendment) (internal citation omitted). Additionally, impounding Long's truck solely as a means to deter Long from subsequently driving without a license, insurance, or registration is, on its own, unreasonable under the community caretaker doctrine. *See id.* at 866 ("The need to deter a driver's unlawful conduct is by itself insufficient to justify a tow under the 'caretaker' rationale."). Rather, in order to fall under the community caretaker exception, Deputy Gill must have reasonably believed Long's truck jeopardized public safety or the efficient movement of traffic. *Id.* at 864 (quoting *Opperman*, 428 U.S. at 368-69). The inquiry is fact specific, and includes a determination of whether the vehicle was subject to theft or vandalism. *Id.* (internal citations omitted).

Long argues that because the truck was parked in a private gas station with the permission of the station's manager, Deputy Gill's decision to impound the truck was not

reasonable. Long submitted declarations from two friends who own a flatbed trailer capable of hauling Long's truck. (ECF No. 62-63.) Benjamin Fisher states, "If I had a chance to do so, I would have come and retrieved the pickup from the Shell gas station near West 11th Ave. and Greenhill Rd., Eugene. Also I have space and was willing to store the pickup on my private property. There was no need to call a tow truck company to remove the pickup." (Benjamin Fisher Decl., 1.) Carol Fisher submitted a similar declaration. As noted, Long, accompanied by the Fishers, retrieved the truck from Roger's Towing the day after Deputy Gill ordered the truck impounded.

There is no dispute that as Long parked the truck on a private lot with the permission of the landowner, the truck was neither impeding traffic nor creating a hazard on a public right of way. Therefore, in order for the community caretaking exception to apply, Deputy Gill must have reasonably believed the impoundment was necessary to protect the vehicle from theft or vandalism.[2]

Long had a suspended license and lacked insurance. The car was not registered. Those facts, knows to Deputy Gill at the time he ordered the truck impounded, are relevant because they informed Deputy Gill that Long could not legally move the truck from the gas station. *See Miranda*, 429 F.3d at 864 (driver's citations relevant "insofar as it affects the driver's ability to remove the vehicle from a location at which it jeopardizes the public safety or is at risk of loss."). The Fishers, however, who lived two miles from the gas station, were willing and able to legally move Long's truck to a safe location. Long states that at the time of the tow, he knew the Fishers were home and that "If I had been given a chance, I could have had my pickup legally removed

---

[2] I note nothing in the record indicates Deputy Gill ever considered Long's vehicle at risk of theft or vandalism.

5 – OPINION AND ORDER

and legally stored." (Long Decl., 2.) Viewing the evidence in the light most favorable to Long, I assume the Fishers could have arrived at the gas station in a matter of minutes. The impoundment occurred at noon on a sunny day. The gas station was open for business, and presumably would remain open for at least several hours. Given these facts, there is a genuine issue of material fact as to whether Long's truck was subject to theft or vandalism.

  Critical to my conclusion, Long had permission to park at the gas station. Viewed in the light most favorable to Long, the facts here, where Long was legally parked with the permission of the property owner (at noon on a sunny day) resemble those in cases where courts found impoundments fell outside of the community caretaker exception. *See United States v. Squires*, 456 U.S. F.2d 967, 970 (2nd Cir. 1972) (no reasonable basis behind officer's decision to tow vehicle from lot behind driver's apartment complex, which was were vehicle was supposed to be parked, in order to protect vehicle); *see also Miranda* 429 F.3d at 865-66 (no reasonable basis to impound vehicle after unlicensed driver parked registered vehicle in licensed driver's private driveway). While "[t]he violation of a traffic regulation justifies impoundment of a vehicle if the driver is unable to remove the vehicle from a public location without continuing its illegal operation," *Miranda* 429 F.3d at 865, the record indicates Long had the means to legally transport the vehicle to a safe location and was legally parked in a relatively safe place.

  Although the Fourth Amendment does not require an officer to wait while an individual makes arrangements to have a vehicle legally transported to a safe area, Long states Deputy Gill never afforded him the opportunity to arrange for moving the vehicle. Although the gas station was "an exposed or public location," *Miranda*, 429 F.3d at 865 (internal citations omitted), Long had permission to legally park at the gas station. One presumes that for several hours following the tow, Long's vehicle was at least as safe as any other vehicle legally parked on private

6 – OPINION AND ORDER

property in Eugene at noon on a sunny day. Viewing the facts in the light most favorable to Long, there is a genuine issue of material fact as to whether the decision to impound the car to protect it from theft or vandalism was reasonable. Under these circumstances, defendants' motion for summary judgment on Long's unreasonable seizure claim is DENIED.

## 2. The Hearing

The Due Process Clause of the Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that no person may be deprived of life, liberty, or property without due process of law. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal citations and quotations omitted). There is no dispute that Long was provided a hearing to challenge the validity of the impoundment. The parties disagree as to whether the hearing was sufficiently "meaningful" to satisfy Long's Constitutional rights.

Due process rights are flexible, depending largely on the specific factual circumstances along with a weighing of the governmental and private interests involved. *Mathews*, 424 U.S. at 334 (internal citations omitted); *Mullane v. Central Hannover Bank & Trust Co.*, 339 U.S. 306, 313 (1950) (due process tolerates variances in procedure "appropriate to the nature of the case."). Each setting invites its own assessment under a *Mathews* analysis and the only general statement that can be made is that persons holding interests protected by the due process clause are entitled to "some kind of hearing." This hearing does not include the full range of rights and protections available to litigants in judicial proceedings. Henry J. Friendly, *Some Kind of Hearing*, 123 U. PA. L. Rev. 1267, 1277-78 (1975).

7 – OPINION AND ORDER

Courts look at three factors when considering the sufficiency of the administrative procedures provided: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S at 335.

The hearing at issue was an administrative hearing to determine the validity of the impoundment. Under Oregon law, the impounding agency must demonstrate, by a preponderance of evidence, that the impoundment was lawful. *See* ORS 809.716(3). Long states:

> I had a rather long discussion with Deputy Osborne. I told him I could not meaningfully defend or answer if the opposing party's case was not presented and the evidence, alleged facts and arguments were withheld and not disclosed.
>
> Deputy Osborne disagreed stating that he had read the "report" before the hearing and felt no need to disclose it.
>
> The opposing party's case was not presented at the hearing to contest the validity of the tow.
>
> I had no way to know the alleged facts or arguments of the opposing party's case.
>
> I had no way to answer, challenge or defend because of the above.

(Long Decl., 3.)

Under a *Mathews* analysis, the Court would be hard pressed to require the County to provide in an impoundment hearing the procedural safeguards of cross examination, live testimony, a public record, and findings of fact prepared by a tribunal. There are, however, fundamental goals and requirements that are core to a hearing designed to assure a meaningful opportunity to be heard. At a minimum these requirements include an unbiased tribunal, an opportunity to be heard and present evidence, the right to know the opposing evidence upon

8 – OPINION AND ORDER

which the tribunal bases his or her decision, and the right to meaningfully respond to the opposing evidence.

In the instant case, the County has failed to provide the minimum due process requirements of an administrative hearing. The record reflects a hearing that amounted to no more than an opportunity to argue with a co-worker of the impounding officer. The "testimony" of Deputy Gill did not meet the statutory requirement that Deputy Gill appear in person or through an affidavit. Instead, Deputy Osborne received an unsigned and undated "narrative" from Deputy Gill that Deputy Osborne refused to show to Long. Even upon requesting a recess, Long was unable to obtain the narrative from the sheriff's record department across the hall from the hearing. It appears from the record that Deputy Osborne read sections of the narrative to Long and asked Long if he agreed with the statements of Deputy Gill in a style more akin to police interrogation than characteristic of a transparent and unbiased discernment of the facts. Viewing the evidence in the light most favorable to Long, there was no opportunity for Long to present information regarding the reasonableness of the seizure under the circumstances of the case.

## CONCLUSION

Defendants' motion for summary judgment (ECF No. 48) is DENIED.

IT IS SO ORDERED.

DATED this 3rd day of October, 2013.

_____/s/ Michael J. McShane _____
Michael McShane
United States District Judge